IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

VISION BANK,

    Plaintiff,

vs.                                                                 CASE NO. CV-09-J-2345-NE

BARBARA J. STOKES, et al.,

    Defendants.

## MEMORANDUM OPINION

Pending before the court is the plaintiff's motion for summary judgment, brief (doc. 15), and evidentiary submissions in support of said motion (doc. 16). Defendants filed a response and memorandum of law in opposition to said motion (doc. 24). The plaintiff has also filed a motion to dismiss Counts I-III of defendant's counterclaim (doc. 30). Defendant Scott Stokes filed a motion for summary judgment on Counts II and IV of the plaintiff's complaint (doc. 31), which has not yet been fully briefed but which the court finds moot for the reasons set out herein.

## FACTUAL BACKGROUND

This case arises from the defendants' default on a series of loans received from plaintiff and loan guarantees and promissory notes in favor of plaintiff. Plaintiffs exhibits A-Q.

*Loan # 17892*

The first loan was received by defendant Barbara Stokes from plaintiff, in the amount of $520,000.00.  In exchange for the loan, Barbara Stokes executed a promissory note in favor of Vision Bank on January 21, 2005.  Plaintiff exhibit A.  In exchange for renegotiating and extending this loan, Barbara Stokes executed another promissory note in favor of Vision Bank on February 27, 2006. Plaintiff exhibit B.  On August 30, 2006, Barbara Stokes again renegotiated and extended this loan and signed a third promissory note in favor of Vision Bank.  Plaintiff exhibit C.  At that time, she also signed a Guaranty on the loan, in favor of Vision Bank.  Plaintiff exhibit D.  As additional security for this loan, defendant Scott Stokes also executed a Guaranty on August 30, 2006, in favor of Vision Bank.  Plaintiff exhibit E.  Barbara Stokes again renegotiated this loan and signed a Multipurpose Note and Security Agreement on March 23, 2007, in favor of Vision Bank, in the amount of $519,952.03.  Plaintiff exhibit F.  She also signed a Continuing Guaranty on March 23, 2007, as additional security for this loan.  Plaintiff exhibit G.

This loan matured on March 23, 2009, and remains unpaid.  Affidavit of Joey Ginn, ¶¶ 13-15.  Plaintiff asserts it is owed $513,412.19 in principal, $177,776.10 in interest, $478.40 in late fees, as well as attorneys' fees and costs,

also recoverable under the terms of the Loan Documents. The current amount due on this loan as of May 13, 2010, was $619,666.69, with interest accruing at the rate of $256.71 per diem thereafter.

*Loan # 21121*

On July 28, 2005, Bishops Landing LLC ("Bishops") received a $900,000 loan from Vision Bank.[1] Carabelle Landing, LLC, as managing member of Bishops Landing, LLC; Barbara Stokes, as managing member of Carrabelle Landing, and non-party J. Donald Boggus, also as a managing member, signed a promissory note for this amount in favor of Vision Bank. Plaintiff exhibit H. As further security for this loan, Barbara Stokes and Scott Stokes each signed a Guaranty in favor of Vision Bank. Plaintiff exhibits I and J.

*Loan # 21199*

In exchange for a further loan from Vision Bank in the amount of $2,580,000.00, Bishops executed another promissory note in favor of Vision Bank, dated August 1, 2005. This was again signed by Carabelle Landing, LLC, Barbara Stokes, and J. Donald Boggus. Plaintiff exhibit K. As further security for

---

[1]Bishops Landing, LLC, was not named as a party to this action, but evidence establishes that the loans made to it by Vision Bank were guaranteed by defendants Barbara and Scott Stokes.

this loan, Barbara and Scott Stokes each signed a Guaranty in favor of Vision Bank. Plaintiff exhibits L and M.

*Loan # 25763*

On August 30, 2006, Bishops executed a renewal promissory note which combined its two prior loans, numbered 21121 and 21199, into a single loan in the amount of $3,678,527.33. Plaintiff exhibit N. This loan was renegotiated and Bishops executed a Multipurpose Note and Security Agreement on March 23, 2007, in favor of Vision Bank, in the amount of $3,678,527.36. Plaintiff exhibit O. This Security Agreement was signed by Barbara Stokes, Scott Stokes, J. Donald Boggus and Jennifer Boggus. *Id.* Also on March 23, 2007, Scott Stokes signed a Continuing Guaranty for the amount of this loan in favor of Vision Bank.[2] Plaintiff exhibit Q.

This loan matured on March 23, 2009, but remains unpaid by Bishops. Ginn affidavit, ¶¶ 29-30. As of May 13, 2010, plaintiff claims amounts due as $3,614,235.82 in principal, $1,187,373.97 in interest, $4,999.90 in late fees, plus attorneys' fees and costs. The plaintiff thus seeks the sum of $4,806,609.60 as of May 13, 2010, with interest accruing thereafter at the per diem rate of $1,807.12.

---

[2]Although plaintiff asserts by affidavit that Barbara Stokes also signed a Continuing Guaranty on March 23, 2007 as additional security for this loan, the exhibit provided by the plaintiff in support of this contention, marked plaintiff exhibit P, is actually an exact copy of the Continuing Guaranty submitted as plaintiff exhibit G, in the amount of $519,952.03.

## A.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## 1. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## 2. DISCUSSION

The plaintiff asserts, and this court agrees, that this case must be analyzed under Florida law, as provided in the Guaranties. The defendants agree that Florida law applies, but add that Florida law requires plaintiff to first foreclose on the property securing the loans before the defendants may be held liable for any shortfall.

Under Florida law, "a suit on a guaranty and a foreclosure action are not inconsistent remedies, and therefore pursuit of either of those remedies without satisfaction is not a bar to the pursuit of the other." *LPP Mortg. Ltd. v. Cacciamani,* 924 So.2d 930, 931 (Fla.App. 3 Dist.2006) (quoting *Gottschamer v. August, Thompson, Sherr, Clark & Shafer, P.C.*, 438 So.2d 408, 409 (Fla. 2d DCA

1983).  As noted in *Syfrett v. Amsouth Bank of Florida*, "[t]he bank did not infringe upon any rights of appellant by first obtaining a money judgment against appellant based upon a personal guaranty, and then proceeding to foreclose a security interest in real estate owned by appellant, based upon the same underlying debt."  *Id*., 588 So.2d 46, 47 (Fla.App. 1 Dist.1991). See also *Vision Bank v. Luke* 2010 WL 2639597, 1 (N.D.Fla.2010) ("Florida law [] permits a holder of a promissory note secured by real property to choose to pursue either an action on the note or an action to foreclose the mortgage, or both."), citing *Mellor v. Goldberg*, 658 So.2d 1162, 1163 (Fla. 2d. DCA 1995); *Floorcraft Distributors v. Horne-Wilson, Inc*., 251 So.2d 138, 140 (Fla. 1st DCA 1971).

     Each of the defendants' arguments concerning why the plaintiff should have to foreclose on the property prior to obtaining a money judgment concern the dollar amount of liability of the defendants, not the issue of liability itself.  The defendants here signed guaranties on the notes in question.  The notes have not been paid.  Hence the defendants are liable for payment of the notes.  As with the issue of whether the plaintiff is required to foreclose before seeking a money judgment, the defendants' argument that they do not own the real property in question does not impact the defendants' liability as guarantors on the notes.

The defendants also argue that the waiver clause in the guaranties, by which they waived all defenses pertaining to the indebtedness, is ambiguous and therefore unenforceable. "A person may waive any legally entitled rights including rights guaranteed by the Constitution, conferred by statute or secured by contract. 22 *Fla.Jur.2d*, Estoppel and Waiver, Section 86. If the waiver is clear and unambiguous it shall be given intended force and effect." *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F.Supp. 1416, 1419 (M.D.Fla.1989) (citing *Central Investment Associates, Inc. v. Leasing Service Corp.*, 362 So.2d 702, 704 (Fla. 3d D.C.A.1978). The clause at issue here states that the guarantors:

> waive any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness...

*See e.g.*, plaintiff exhibit D, ¶ 7. The court finds no ambiguity in the above clause, despite defendants' arguments otherwise.

Defendants' argument that they did not know what they were waiving is similarly unpersuasive. According to the defendants, at the time they signed the guaranties, they did not know that events alleged as affirmative defenses would

occur. However, events such as a "severe downturn in the U.S. real estate market" (tenth affirmative defense); a "worldwide economic crisis" (eleventh affirmative defense); "impracticality of performance" due to the "worldwide economic crisis" (twelfth affirmative defense); and plaintiff's acceptance of TARP funds (thirteenth affirmative defense); have no bearing on whether the defendants understood the waiver at the time they signed the guaranties.[3] As the Eleventh Circuit has recognized in applying Florida law, "it is not the function of the courts to 'interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.' " *Marriott Corp. v. Dasta Constr. Co.*, 26 F.3d 1057, 1068 (11th Cir.1994) (quoting *Steiner v. Physicians Protective Trust Fund*, 388 So.2d 1064, 1066 (Fla. 3d DCA 1980)).

The court has considered the defendants' other arguments, but find no merit to them. For example, the court has considered the defendants' assertion of "impossibility of performance" as defined under Florida law. In a remarkably similar case, the Northern District of Florida recently noted that the fact property declined in value does not support a claim of commercial frustration, which "is

---

[3] The defendants also fault the plaintiff for failing to join Bishops as an indispensable party. Sixteenth Affirmative Defense. However, the defendants could have, but failed to, bring third party claims against Bishops, despite Bishops liability on the notes in question.

predicated upon the premise of giving relief in situation where the parties could not provide themselves by the terms of the contract against the happening of subsequent events, but it does not apply where the intervening event was reasonably foreseeable and could and should have been controlled by provisions of such contract." *Vision Bank v. Luke,* 2010 WL 2639626, 2 (N.D.Fla.2010), (quoting *Hilton Oil Transport v. Oil Transport Co.*, S.A., 659 So.2d 1141, 1147 (Fla. 3d. DCA 1995).

## B. THE PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS I-III
### 1. MOTION TO DISMISS STANDARD

The United States Supreme Court strengthened minimum pleading requirements in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). Under *Twombly*, on a motion to dismiss, the court need only decide if a claim is "plausible." The complaint does not need to set forth "detailed factual allegations," *Twombly*, 550 U.S. at 555, but only "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

## 2. ANALYSIS

Because the court has considered the evidence submitted in support and in opposition to the plaintiff's motion for summary judgment as it applies to the motion to dismiss, the court finds the motion to dismiss is more properly considered as a further motion for summary judgment.

The plaintiff asserts that defendants' Counterclaims I-III fail to meet the Twombly standard because the claims are without merit. The defendants' specific counterclaims assert that as part of the loans in question being consolidated in August 2006 into one loan for $3,678,527.33, the plaintiff loaned the defendants an additional $200,000.00 so Bishops could complete certain construction items. Counterclaim (doc. 19) at ¶ 7. The defendants then complain that the plaintiff did not loan the additional $200,000.00 to complete construction items. *Id.*, ¶ 8. The defendants cite no law in support of their claim that the failure to loan additional monies states a cause of action. The defendants do assert that the failure to loan additional funds made the guaranties impossible or impractical to perform.

Based on this line of reasoning, the defendants brought Counterclaims for negligence in lending (Count I); breach of the implied covenant of good fail and fair

dealing (Count II); breach of fiduciary duty (Count III); fraud and deceit (Count IV), and fraudulent concealment (Count V) with respect to the Stokes loan; and fraud and deceit (Count VI) and fraudulent concealment (Count VII) with respect to loaning additional monies. The plaintiff's motion to dismiss addresses only the first three counterclaims.

As the court understands the defendants' assertions in their counterclaims, after borrowing more than $3,000,000.00, Bishops and Barbara Stokes required an additional $200,000.00 to complete "municipally required construction items to obtain a development order to develop the Project," which the plaintiff did not lend. Defendants' response, at 22-23. Thus, according to the defendants, it is plaintiff's own fault the loans were not repaid.

Count I of the Counterclaim asserts that plaintiff's failure to follow its own lending practices somehow caused the defendants to default on the loans and guaranties. In essence, this claim faults plaintiff for loaning Bishops money at all, and faults plaintiff for loaning too much money.[4] Counterclaim, ¶ 12-13. The court wholly agrees with the plaintiff that such a claim fails to state a viable cause of action under *Twombly* and *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009)

---

[4]This is in contrast to defendants' complaint that plaintiff's failure to loan an additional $200,000.00 caused the default.

("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Count II of the defendants' counterclaim asserts that the plaintiff's failure to loan Bishops an additional $200,000.00 was in breach of the implied covenant of good faith and fair dealing. However, a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract. *Vision Bank v. Luke,* 2010 WL 2639597, 1 (N.D.Fla.) (N.D.Fla.,2010); citing *Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 F.3d 1146, 1152 (11th Cir.2005). Defendants' failure to allege any breach of an express contract term by plaintiff is fatal to this claim.

Count III of the defendants' Counterclaim asserts the plaintiff breached its fiduciary duty to the defendants. Under Florida law, "where the bank knows or has reason to know of the customer's trust and confidence under circumstances exceeding an ordinary 'customer relationship'", or where the customer is "relying on the bank so as to counsel and inform him" or in some cases where the lender takes on extras services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control, a fiduciary relationship may be created. *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 519-521 (Fla. 3d DCA 1994), *rev. denied*,

654 So.2d 918 (Fla.1995) (bank took advantage of its knowledge of customer's weakness to pressure it to buy overvalued equipment from another bank customer); *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So.2d 204, 208 (Fla. 3d DCA 2003) (factor which orchestrated an agreement with third party by which borrower's finances suffered further decline may have breached fiduciary duty). Although the defendants claim they relied on their relationship with plaintiff as a bank and were placing their trust with the plaintiff to counsel and advise them, any such claim is belied by the sheer number of real estate ventures in which the defendants were involved.

Although not raised by the plaintiff in its motion to dismiss, the court further finds no merit in defendants' Counterclaims IV-VII, each based on some allegation of fraud. The defendants argue that the language of the waivers in the Guaranties does not extend to their counterclaims based on fraud, under language found in *Royal Palm Sav. Ass'n*, 716 F.Supp. at 1419. The court in that case found that under the Guaranty at issue before it, "[t]here is nothing [] that could serve as a waiver of Mr. Bader's rights to pursue his independent causes of action against Plaintiff/Counter-Defendant." *Id.* In contrast, the Guaranties before this court each specifically state that the defendants, as Guarantors, specifically "waive any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except

14

the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud..." *See e.g.,* plaintiff exhibit D, ¶ 7.  The fact that different waiver provisions were found not to bar different counterclaims under different facts in a different case is of no assistance to the defendants here, who clearly waived their rights to bring such claims.[5]

Because the defendants clearly waived any right to bring claims based on fraud under the specific language of the waivers, the court finds Counts IV-VII of the defendants' Counterclaim are clearly within the waiver of rights contained int he Guaranties and the defendants have no right to proceed with the same.  Although the

---

[5]The defendants are knowledgeable, seasoned real estate developers.  An on-line search reveals they have been involved in developments called Coastal Dunes, Bishops Landing, Coastal Grove, The Cottages at Seagrove, Mecox Landing, Serentiy at Dune Allen, Shifting Sands and SummerPlace, all in South Walton County, Florida.  *See* www.corporationwiki.com/graphs/roamer.aspx?id=17520905 (as of July 8, 2010); www.stokesdevelopment.net (as of June 10, 2010).  Barbara Stokes is further listed as the manager of Carrabelle Landings, LLC, a development in Carabelle, Florida; the director and manager Carraway Bay Plantation LLC, a development in Port Saint Joe, Florida, and a manager along with Donald Boggus of D & B Acquisitions, LLC .
https://w3.lexis.com/research2/pubrec/searchpr.do?_m=37df81ef1f8c8150f0dc2bf6869904d1&_src=314662.3004974&csi=314662&wchp=dGLbVlW-zSkAA&_md5=cf9e96270691df98cd52d3def9ec27bd (as of July 8, 2010).
    The defendants also own rental property in coastal communities, such as Southern Sons West, 294 Gulf Shore Drive, Grayton Beach, Florida, 255 Blue Mountain Road, Unit 8, Santa Rosa Beach, Florida, and 294 Gulf Shores Dr., Santa Rosa Beach, Florida. www.corporationwiki.com/graphs/roamer.aspx?id=17520905 ;
https://w3.lexis.com/research2/pubrec/searchpr.do?_m=224bb19c018137689a0f226dc8a55149&_src=314697.3006192&csi=314697&wchp=dGLzVzz-zSkAb&_md5=fffd12880f16eacbdbb05fd208ae6101

defendants repeatedly assert that Barbara Stokes relied on false representations made by plaintiff and Boggus in signing the underlying loans, such assertions fly in the face of evidence before the court, including evidence that Barbara Stokes and Donald Boggus were business partners on multiple land developments.

Rather, the court finds that the defendants are savvy real estate developers who knew or should have known the language of the guaranties they signed. While defendant Scott Stokes asserts he is a stay at home father who never should have been asked to guarantee a loan for more than $3,000,000.00, property search records reflect he jointly owns or has owned with defendant Barbara Stokes a number of properties, including land in Montgomery, Huntsville, Lacey Spring, Gardendale and Cullman, Alabama, and Port St. Joe, Florida, he is or was a director of Carraway Bay Plantation, LLC, and an incorporator of Stokes Development, LLC.[6] Even more telling, in the defendants' own counterclaim, they assert that "[t]he Defendants" were damaged as a result of plaintiff's actions, that "they were not able to develop the Project" and that "they were not able to generate the revenue necessary to pay back the Loans." Counterclaim, ¶ 19. The only defendants to this action are Barbara and Scott Stokes. Thus, the court finds no merit in defendants' other assertions, such as

---

[6]https://w3.lexis.com/research2/pubrec/searchpr.do?_m=224bb19c018137689a0f226dc8a55149&_src=314697.3006192&csi=314697&wchp=dGLzVzz-zSkAb&_md5=fffd12880f16eacbdbb05fd208ae6101.

that Scott Stokes signature on the guaranties violates the Equal Credit Opportunity Act.[7]

## CONCLUSION

Having considered the foregoing, and being of the opinion that summary judgment is due to be granted in favor of the plaintiff and against the defendants on all counts of the plaintiff's complaint;

It is therefore **ORDERED** by the court that the plaintiff's motion for summary judgment (doc. 15), be and hereby is **GRANTED**. Judgment is entered in favor of the plaintiff and against the defendants on all counts of the plaintiff's complaint, the court finding no genuine issues of fact remain and that the plaintiff is entitled to judgment in its favor as a matter of law.

For the reasons set forth above, the court is further of the opinion that the plaintiff's motion to dismiss Counts I-III of defendants' counterclaim (doc. 30) is due to be and hereby is **GRANTED**, and these claims are **DISMISSED WITH PREJUDICE**. It is also **ORDERED** by the court that judgment is granted in favor of the plaintiff and against the defendants on Counts IV-VII of the defendants' counterclaim, for the reasons set forth above.

---

[7] Oddly, the defendants argue that "B. Stokes was individually creditworthy for the loans she received from Vision Bank." Defendant's response, at 19-20. The court notes only that the entire cause of the litigation in front of it is because the loans B. Stokes received from Vision Bank have not been repaid.

It is further **FOUND** by the court that defendant Scott Stokes' motion for summary judgment on Counts II and IV of the plaintiff's complaint (doc. 31), is **MOOT**.

**DONE** and **ORDERED** this the 12th day of July, 2010.

*[signature: Inge Prytz Johnson]*

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE